## GOTHAM CAN CO. v. UNITED STATES.

Court of Claims.

January 20, 1930.

No. J–255.

Theodore R. Benson, of Washington, D. C. (Joseph R. Little, of Washington, D. C., on the brief), for plaintiff.

George H. Foster, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN and GRAHAM, Judges.

GREEN, J. This suit is brought to recover taxes alleged to have been illegally collected from the plaintiff. It appears without dispute that in April, 1919, the plaintiff made a return of its corporation income and profits tax for the year 1918 and paid taxes in accordance therewith. In September, 1922, the Commissioner of Internal Revenue assessed an additional tax against plaintiff for the year 1918 in the amount of $43,467.92, and on October 17, 1922, demanded payment thereof from the plaintiff. On October 27, 1922, plaintiff filed a claim for abatement of the taxes assessed for 1917 to 1920, inclusive, which claim included the amount of additional taxes assessed for the year 1918. Upon consideration of the claim for abatement, in April, 1924, the commissioner notified the plaintiff that this claim for abatement, in so far as it related to additional taxes for 1918, would be allowed in the sum of $7,346.74 and rejected in the amount of $36,121.18, for which amount, together with interest and penalty thereon amounting to $2,070.84, a total of $38,192.02, the commissioner made demand upon plaintiff on October 2, 1924, and with such demand stated that if payment thereof was not received in ten days, collection would be made by seizure and sale of property. Shortly thereafter, plaintiff paid the amount demanded and received credit therefor as shown in the Findings of Fact. On June 15, 1927, the plaintiff filed, in due form, a claim for refund of the sum so paid, which was rejected by the Commissioner of Internal Revenue.

The facts present a case in which a tax additional to that shown by the return of plaintiff was assessed within the proper time by the Commissioner of Internal Revenue. A claim of abatement was then filed by the plaintiff, which, after consideration, was, about a year and a half later, partially allowed by the commissioner, who, at the later date and after the statute of limitations had expired, made demand for the tax as finally determined, accompanied with the statement that unless the tax was received in ten days collection would be made by seizure and sale of the property. Plaintiff paid the tax in accordance with the demand, and about two years and eight months later, filed a claim for refund of the taxes so paid, which claim was rejected by the commissioner.

The claim of the plaintiff is that the collection of the tax was prohibited by section 250 (d) of the Revenue Act of 1921 (42 Stat. 265), and was erroneous and illegal. On the part of defendant, it is urged that sections 607 and 611 of the act of 1928 (26 USCA §§ 2607, 2611) prevent any recovery on the part of the plaintiff.

The views of this court upon the questions involved, with one exception, are very fully expressed in the decision upon the similar case of Oak Worsted Mills v. United States (No. J–180) 36 F.(2d) 529, decided December 2, 1929, and we think it unnecessary to say anything more on the points therein determined than that we see no reason to change the conclusion set out in the opinion rendered therein.

In addition to the cases cited as supporting the opinion in the Oak Worsted Mills Case, supra, the recent case of Goodcell v. Graham & Foster (C. C. A.) 35 F.(2d) 586, 587, is directly in point and holds that by section 611 (26 USCA § 2611) "Congress evidently intended to cover cases where actual delay had resulted from the filing of a claim in abatement. The idea of a legal or compulsory or involuntary stay is neither expressed nor implied."

The one point which was not raised or decided in the Oak Worsted Mills Case relates to the construction of section 1106 (a) of the act of 1926 (repealed by the act of 1928). Section 612 of the act of 1928 (45 Stat. 875) reads as follows:

"Section 1106 (a) of the Revenue Act of 1926 is repealed as of February 26, 1926."

The act of 1928 was not approved until May 29, 1928. This case was begun May 4, 1928. Whether this repealing clause would affect an action which was begun before the 1928 act went into effect, we do not find it necessary to determine, for the reason that in our opinion section 1106 of the act of 1926 (44 Stat. 113) is of no benefit to plaintiff if held applicable. On the contrary, we think it clearly indicates the intention of Congress to provide that a suit cannot be maintained to recover taxes collected after the period of limitations has run, if the taxes so paid had originally been rightfully assessed.

Counsel quote from the section last above referred to as follows:

"The bar of the statute of limitations against the United States in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability. * * *"

It is contended on behalf of plaintiff that this provision created a vested right in plaintiff of which it could not be deprived without due process of law and without just compensation. There might be some basis for this argument if the provision of the law stopped with the language above set out, and at some later date or possibly by some provision in some other section of the same act a limitation was fixed upon the effect of the language quoted. But in construing a statute, part of a sentence cannot be lifted out and entirely separated from qualifying words contained in another clause thereof. It will be observed that the part of the statute quoted ends with a semicolon. The remainder of the sentence must be considered in connection with the portion set out above. It is as follows: "But no credit or refund in respect of such tax shall be allowed unless the taxpayer has overpaid the tax."

This is a qualifying clause. Manifestly the two clauses must be read and construed together, and in such a case as we have here the second clause is clearly a limitation on the effect of the first clause. The meaning is clear. By the first clause it was intended to extinguish the liability and prevent collection of any tax barred by the statute of limitations, but under the second clause of the section it was made clear that if the tax had been collected after the limitation period but prior to the passage of the revenue act of 1926, only the amount collected in excess of the correct tax for the year could be recovered. If it is not so construed, the words of the second clause are obviously of no use whatever in any case. No citations are needed to show that we should construe the words of the second clause so as to give some force and effect thereto if this can consistently be done, but it requires no straining of the language to construe section 1106 in the manner stated above. The language is specific and direct, that there shall be no refund unless the taxpayer has overpaid the tax. In other words, there was to be no refund where the taxpayer had paid only the tax which was originally due and owing notwithstanding the statute of limitations had run against the collection thereof. In this case, there being no evidence to the contrary, the presumption is that the tax was originally due and owing and that the taxpayer has not overpaid the tax. Section 1106 vested no right in the taxpayer who had not overpaid the tax. On the contrary, it specifically declared that no refund should be allowed him. The whole matter may be summed up by saying that the plaintiff was deprived of no vested right for the reason that the right which he claims never came into existence under the statute.

It should be kept in mind in considering cases of this nature that the right to bring a suit at all against the government is purely statutory, and that the right to recover back taxes wrongfully collected rests upon the same basis. The government may limit this right by statutory directions and refuse to refund the tax even where it is wrongfully collected, if application is not made in the manner provided by law, and may provide, as it has in this case, that an action shall not be maintained to a successful conclusion under certain circumstances. In this particular case, the matters necessary to maintain the action did not exist. The provision under discussion did not forbid suit being brought. It merely attached a condition to its being successfully maintained. As was said in Rock Island, A. & L. R. Co. v. United States, 254 U. S. 141, 143, 41 S. Ct. 55, 56, 65 L. Ed. 188:

"If it [the government] attaches even purely formal conditions to its consent to be sued those conditions must be complied with." As this court only considers claims against the United States, it is continually being reminded of these principles which must be applied to the case at bar.

There are some decisions of the United States District Courts, or the Circuit Courts of Appeals, which ought to be noticed in this connection. The case of Aroline C. Gove v. Nichols, Collector (D. C.) 23 F.(2d) 856, sustains the position taken by plaintiff in the case at bar. The case just cited was one in which taxes were collected after the period of limitation had expired by means of threats to distrain the taxpayer's property. The case seems to have been submitted on an untenable basis on behalf of the government, in that it was claimed that the provisions prohibiting a credit or refund, unless the tax was overpaid, operated to keep alive the taxpayer's liability. Such was not the case. It simply prevented any suit from being maintained unless the taxpayer had overpaid the tax, and the court was entirely correct in rejecting this contention. The court was also correct in holding that at the time the taxes were paid, the "Government was wholly without remedy to enforce the payment of the tax." On this basis alone, it held that the taxpayer could maintain his action to recover the taxes paid, although he had not shown that he had overpaid the tax, but this does not follow. As we have shown above, this would depend

entirely on whether the government authorized a suit to be maintained under such circumstances and for that purpose.

The case of Mertz v. Mellon, decided by the Supreme Court of the District of Columbia January 20, 1928, C. C. H. No. D–8107, page 8233, also involved the construction of section 1106, but only so far as the first clause of subdivision (a) is concerned. In that case the plaintiff sought to obtain relief by injunction against the execution of a distraint warrant issued to secure payment of what was claimed to be an overassessment of income taxes, the warrant having been issued after the expiration of the period of limitation for the collection thereof. The court refused to dismiss the bill, holding quite properly that the liability had been extinguished, but it will be observed that in this case the question of what taxes might be recovered by suit against the government was not involved, and therefore the decision has no application to the case at bar.

The case of Pepsin Syrup Co. v. Schwaner (D. C.) 35 F.(2d) 197, is one that seems to directly sustain the contention of plaintiff. In that case, however, a concession made on the part of defendant would seem by implication to yield the real point in the case, which was apparently not considered by the court. Here again it appears that it was not noticed that in the same sentence of section 1106 which provided that the liability should be extinguished, a qualifying clause was added which limited the first clause so that "no credit or refund * * * shall be allowed unless the taxpayer has overpaid the tax"; and that no vested right was or could be acquired beyond what this provision permitted.

In the case of Ellay Co. v. Bowers (C. C. A.) 25 F.(2d) 637, 639, the court said:

"While section 1106 (a) secures repayment of outlawed taxes which have been collected, it also permits the government to retain so much of the tax paid before the expiration of the limitations provision against collection as represents the correct amount of the tax actually due *and computed without regard to the limitations provisions.*" (Italics ours.)

The two statements contained in this sentence are not consistent except under a construction for which we think no one will contend. There was no necessity for the enactment of section 1106 in order to "permit the Government to retain so much of the tax paid before the expiration of the limitations provision against collection as represents the correct amount of the tax actually due." The government, of course, could retain taxes "actually due" which were paid before the period of limitation had expired before the enactment of section 1106 and without regard to it after it had been enacted. In such cases there was no liability to extinguish. It had already passed out of existence. Evidently what Congress had in mind when section 1106 was adopted was the well-known principle so often repeated in court decisions, that the expiration of the period of limitations does not extinguish the debt or claim but only bars the remedy, and it was intended by this section to make an exception to this rule. We think that under no possible construction of section 1106 (a) can it be construed as applying to taxes "paid *before* the expiration of the limitations provision against collection." (Italics ours.) It manifestly refers solely and only to taxes collected after the expiration of the limitations provision, and we therefore think that this statement was made either by inadvertence or that there is in some way a typographical error in connection with it. Eliminating this statement with reference to taxes collected before the expiration of the limitations provision, the statement would be correct that section 1106 (a) permits the government to retain "so much of the tax paid * * * as represents the correct amount of the tax actually due and computed without regard to the limitations provisions." This is what section 1106 (a) in fact did. It permitted that portion of the tax which had been collected and which was not an overpayment to be retained by the government "without regard to the limitations provisions." If we have correctly interpreted the meaning of the language of the court, the decision in the Ellay Co. Case, supra, supports what, in our opinion, is the correct construction of section 1106 (a). While we think it is impossible to reconcile the two statements which we have quoted from the opinion therein, it is quite clear that in any event it cannot be held to be an authority for what plaintiff contends. The Supreme Court has, it is true, denied certiorari in the case (277 U. S. 606, 48 S. Ct. 601, 72 L. Ed. 1012), but the question in the case was an altogether different one from that to be considered in the case at bar. It was not a case where the tax had been collected and the plaintiff was seeking to obtain a refund, but a case where, after the expiration of the period of limitations for the collection of the tax, a warrant of distraint had been issued and seizure was about to be made thereunder. The ultimate question was

whether an injunction against the enforcement of the distraint warrant should be denied on the ground that plaintiff had an adequate remedy at law. It would seem quite obvious that by paying the tax and then bringing suit for a refund thereof the plaintiff would obtain adequate relief—that is, such relief as the court found it was entitled to. The courts have been repeatedly petitioned to entertain suits to restrain distraint on the ground that the alleged tax was unconstitutional (Bailey v. George, 259 U. S. 16, 42 S. Ct. 419, 66 L. Ed. 816), or outlawed (Graham v. Du Pont, 262 U. S. 234, 43 S. Ct. 567, 67 L. Ed. 965; Cadwalader v. Sturgess [C. C. A.] 297 F. 73; Id., 265 U. S. 584, 44 S. Ct. 459, 68 L. Ed. 1192), but in the cases cited and many others the courts have uniformly refused to restrain the enforcement of the distraint warrant except under the one condition provided in the 1926 and 1928 acts, namely, that the statutory notice has not been given. The decision therefore of the Supreme Court denying certiorari in the Ellay Co. Case has no bearing upon the questions involved herein.

It follows from what has been said above that while the statute does not permit plaintiff to maintain its action, it has lost no vested right and its petition must be dismissed. It is so ordered.

WILLIAMS and LITTLETON, Judges, did not hear and took no part in the decision of this case.

BOOTH, Chief Justice, and GRAHAM, Judge, concur.