**WASHINGTON COAL & COKE CO. v. HEINER, Collector of Internal Revenue.**

No. 5865.

District Court, W. D. Pennsylvania.

June 16, 1930.

McVICAR, District Judge.

This is an action in assumpsit to recover $142,561.48, taxes alleged to have been illegally collected from plaintiff by defendant, together with interest thereon. Jury trial was waived and the facts were nearly all agreed upon. The court finds the following findings of fact and conclusions of law:

1. The plaintiff at all times hereinafter mentioned was and is a domestic corporation organized and existing under the laws of the state of Pennsylvania, maintaining its office and principal place of business in the borough of Dawson in said state.

2. D. B. Heiner, the defendant, is, and ever since on or about the 1st day of August, 1921, has been, the duly commissioned, qualified, and acting collector of internal revenue in and for the Twenty-Third district of Pennsylvania.

3. On or about the 15th day of March, 1919, the plaintiff filed with the then collector of internal revenue in and for the said Twenty-Third district of Pennsylvania, without fraud or willful error, its tentative, consolidated income, war profits, and excess profits tax return for the calendar year 1918, and on June 16, 1919, filed, without fraud or willful error, its final consolidated return for said year showing an aggregate tax liability, computed on the basis of the net income set forth in said return, of $1,738,-

879.51. Attached to said return was an addendum captioned, "Petition of the Washington Coal and Coke Company for assessment under the provisions of Section 328 of the Revenue Act of 1918," which set forth the facts and circumstances which the plaintiff alleged entitled it to the benefits of section 328 of the Revenue Act of 1918 (40 Stat. 1093).

4. On or about September 3, 1919, the commissioner assessed against the plaintiff as income, war profits, and excess profits taxes for the calendar year 1918, the total aggregate amount of tax as computed on the net income set forth in the above-mentioned final return, to wit, the said sum of $1,738,-879.51.

5. The plaintiff paid under protest to the then collector of internal revenue in and for said Twenty-Third district of Pennsylvania, income, war profits, and excess profits taxes amounting to $1,492,967.16, itemized as follows:

| Date | Amount |
| --- | --- |
| March 17, 1919 | $408,278.42 |
| June 17, 1919 | 338,205.16 |
| Sept. 15, 1919 | 373,561.40 |
| Dec. 12, 1919 | 372,922.18 |
| Total | $1,492,967.16 |

The amount of excess and war profits tax paid equaled 50 per cent. of the plaintiff's net income for 1918.

6. On or about January 17, 1924, the plaintiff was advised by the commissioner that an audit of its return by his office resulted in an overassessment of $60,062.01 for the calendar year 1918. He issued a certificate of overassessment for this amount and transmitted it to the defendant, who on or about July 24, 1924, abated this amount of the 1918 tax.

7. On or about March 28, 1924, the commissioner determined that plaintiff had overpaid its 1919 income and profits taxes in the amount of $8,703.06. The commissioner accordingly issued a certificate of overassessment for that amount. On or about July 7, 1924, the defendant credited the said overpayment against the outstanding assessment of 1918 tax.

8. On or about June 14, 1926, the plaintiff was notified by the commissioner that its tax liability for 1918 had been further reduced by the amount of $80,221.44. The commissioner accordingly issued a certificate of overassessment for that amount, which he transmitted to the defendant, who in turn abated this additional amount of 1918 tax.

9. On or about June 14, 1926, the plaintiff was notified by the commissioner that it had overpaid its tax for 1919 in the further sum of $7,743.81. The commissioner issued a certificate of overassessment and transmitted it to the defendant, who in turn credited this overpayment on or about October 15, 1926, against the outstanding balance of 1918 tax.

10. On June 28, 1926, the plaintiff paid to the defendant under protest the balance of the tax outstanding on its books for 1918, to wit, $89,182.03.

11. On November 13, 1926, pursuant to notice and demand from the defendant, the plaintiff paid under protest interest in the amount of $36,932.47 on the above-stated balance of tax for 1918.

12. The following is a summary of the assessments, collections, credits applied, and abatements:

| Sept. 3, 1919. | Original assessment | | $1,738,879.51 |
| --- | --- | --- | --- |
| Nov. 13, 1926. | Interest assessment | | 36,932.47 |
| | Total assessment | | $1,775,811.98 |
| Mar. 17, 1919. | Paid | $408,278.42 | |
| June 17, 1919. | Paid | 338,205.16 | |
| Sept. 15, 1919. | Paid | 373,561.40 | |
| Dec. 12, 1919. | Paid | 372,922.18 | |
| July 24, 1924. | Abated | 60,062.01 | |
| July 7, 1924. | 1919 Credit Applied | 8,703.06 | |
| Oct. 15, 1926. | Abated | 80,221.44 | |
| Oct. 15, 1926. | 1919 Credit Applied | 7,743.81 | |
| June 28, 1926. | Paid | 89,182.03 | |
| Nov. 13, 1926. | Interest Paid | 36,932.47 | |
| | | | $1,775,811.98 |

13. The commissioner reduced invested capital for 1918 by the sum of $97,004.76 by assuming a tentative income, excess and war profits tax, prorating it to the dates of payment of dividends, and deducting such assumed pro rata accrual from tentative pro rata earnings in order to determine the amount of earnings available for dividends. By this method the plaintiff's tax liability was increased in the sum of $6,829.14, with interest thereon of $2,881.90, or a total of $9,711.04.

14. On or about July 5, 1928, the plaintiff filed with the commissioner, on the form prescribed by him for that purpose, a written claim for the refund of $6,829.14, with interest, on the ground that the collection thereof by the defendant was erroneous, illegal, and void, and specified therein that the commissioner had erroneously reduced invested capital for 1918 by the amount of $97,004.76, by applying a tentative tax for 1918 against current earnings, thus reducing current earnings available for dividends. Under Commissioner v. Pittsburgh Knife & Forge Company (C. C. A.) 30 F.(2d) 522, defendant concedes that plaintiff is entitled to recover said $9,711.04 with interest on $6,829.14 from June 28, 1926, and on $2,881.90 from November 13, 1926, as provided by law.

15. On or about May 24, 1928, the plaintiff filed with the commissioner, on the form prescribed by him for that purpose, written claim for the refund of $6,829.14, with interest, on the ground that the collection thereof by the defendant was erroneous, illegal, and void; and specified therein that the commissioner had erroneously reduced invested capital for 1918 by the amount of $97,004.76, by applying a tentative tax for 1918 against current earnings, thus reducing current earnings available for dividends. Under Commissioner v. Pittsburgh Knife & Forge Company (C. C. A.) 30 F.(2d) 522, defendant concedes that plaintiff is entitled to recover said $9,711.04 with interest on $6,829.14 from June 28, 1926, and on $2,881.-90 from November 13, 1926, as provided by law.

16. On or about May 24, 1928, the plaintiff filed with the commissioner, on the form prescribed by him for that purpose, written claim for the refund of $133,858.42, with interest, on the ground that the collection thereof by the defendant was erroneous, illegal, and void, and specified therein that the tax was not due and owing to the United States, because at the time of the collec-tion the time in which to collect said tax had long since expired, and that the tax had been extinguished. Although more than six months had expired since the claim was filed, the commissioner has neither allowed nor rejected said claim.

17. On February 7, 1924, plaintiff and the Commissioner of Internal Revenue entered into an agreement in writing, known as an income and profits tax waiver for 1918, on Form 672M, reading as follows:

"February 2, 1924.

_____

(Date)

"Income and Profits Tax Waiver

"In pursuance of the provisions of sub-division (d) of Section 250 of the Revenue Act of 1921, Washington Coal & Coke Company of Dawson, Penna., and the Commissioner of Internal Revenue, hereby consent to a determination, assessment, and collection of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of said Company for the year 1918 under the Revenue Act of 1921, or under prior income, excess-profits, or war profits tax Acts, or under Section 38 of the Act entitled 'An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes' approved August 5, 1909. This waiver is effective until March 15, 1925.

"Washington Coal & Coke Co. Taxpayer,

"By M. E. Strawn, Vice President.

"Attest:

"Jos. H. Strawn, Secretary and Treasurer

"[Seal]   D. B. Heiner, Commissioner."

18. Defendant forwarded the plaintiff's claim for special assessment to the Commissioner of Internal Revenue in due course. The defendant did not collect the outstanding unpaid assessment until after the plaintiff's claim for special assessment had been finally acted upon by the Commissioner of Internal Revenue. The commissioner advised the plaintiff under date of April 16, 1925, that its claim for special assessment had been denied. The commissioner notified plaintiff of his final determination of plaintiff's income, war profits, and excess profits tax liability under date of June 14, 1926, in which plaintiff's request for reconsideration of its claim for special assessment was denied. The commissioner's final determination had been preceded by an examination of plaintiff's books by a revenue agent in 1923, and by consideration of briefs filed by plaintiff setting forth why the net income report-

ed on its return for 1918 was in excess of its statutory net income, and why its invested capital should be increased, or special assessment should be granted. Numerous conferences were held, beginning in 1921, between duly authorized representatives of the plaintiff and the commissioner; the last of such conferences being held on January 28, 1926.

The commissioner denied plaintiff's request for special assessment, but allowed plaintiff's contentions on other particulars in part, resulting in the abatements of tax enumerated in the stipulation of agreed facts.

### Conclusions of law.

1. Plaintiff is entitled to recover $9,711.04 with interest on $6,829.14 from June 28, 1926, and on $2,881.90 from November 13, 1926, being that part of plaintiff's claim alleged in paragraph 14 of the statement of claim.

2. Plaintiff is not entitled to recover anything except as set forth in conclusion 1.

3. The word "assessment" as used in the agreement of December 7, 1925, includes "collection."

### Opinion.

On June 16, 1919, plaintiff filed its final return of income, war and excess profits for the calendar year 1918, showing tax liability of $1,738,879.51. On September 3, 1919, the commissioner made assessment against plaintiff for the amount shown on its return. On July 16, 1924, without any agreement extending time, the then existing statute of limitations would have prevented the collection of any tax from plaintiff for the year 1918, remaining unpaid. By two agreements dated February 7, 1924, and January 5, 1925, the time for assessment and collection of taxes against plaintiff was extended until March 15, 1926. On December 7, 1925, the time for making assessment was extended until December 31, 1926. On June 28 and November 13, 1926, plaintiff, after notice from the commissioner, and under protest, paid defendant the balance of the tax assessed with interest, amounting to $126,114.50. If the agreement of December 5, 1925, did not extend the time for collection from March 15, 1926, to December 31, 1926, the taxes paid were illegally collected from plaintiff and it would be entitled to recover the same with interest. If the agreement included collection, plaintiff would not be entitled to recover. Does the word "assessment" include "collection"? The language of the agreement is:

"Income and Profits Tax Waiver.

"For Taxable Years Ended Prior to January 1, 1922.

"December 7, 1925.

"In pursuance of the provisions of existing Internal Revenue Laws Washington Coal & Coke Company, a taxpayer of Dawson, Pennsylvania, and the Commissioner of Internal Revenue hereby waive the time prescribed by law for making any assessment of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of said taxpayer for the year 1918 under existing revenue acts, or under prior revenue acts.

"This waiver of the time for making any assessment as aforesaid shall remain in effect until December 31, 1926."

The word "assess" or "assessment" has different meanings. It is admitted that such words in the present agreement would include the right to collect a tax assessed subsequent to the date thereof. It conferred the right to reassess, add to, or reduce the assessment made (which was done in this case). In the taxing acts it is frequently used as conveying the right of collection. In Stange v. United States, C. C. H. Tax Service, 1929, vol. 3, p. 8865, the Court of Claims, in an opinion by Judge Green, held that the word "assess" was broad enough to include "collect," saying:

"It should be said also that the words 'assess' and 'assessment,' when used with reference to taxes, often include the collection thereof as a necessary sequence. In fact the term 'assess' is used at times to include all the steps involved in imposing a tax on property (Allen v. McKay, 120 Cal. 332 [52 P. 828]), and 'to assess' often means to levy a tax (see cases cited under note 76, 5 C. J. 813), the two words being used with practically the same meaning, Idem, 76(b), and the words 'to levy' always include the collection of a tax. The same rule applies to the word 'assessment,' and the parties evidently intended that the word 'assessment' should also cover the collection of the tax.

"For the reasons stated above we think that the waiver removed the bar of the statute of limitations not only as to assessment but as to collection of the tax."

With what intent did the parties use the word "assessment" in the contract of De-

cember 7, 1925? The acts of the parties in pursuance thereof is the strongest evidence of their intention. This is a well-established universal rule for the interpretation of contracts where the meaning is doubtful. There is no evidence that the commissioner at any time indicated that an additional assessment might be made. On the contrary, he notified plaintiff on January 17, 1924, that its assessment had been reduced $6,062.01, and on June 24, 1926, which was subsequent to the agreement under consideration, that the assessment had been further reduced $80,221.44. On June 14, 1926, the commissioner notified plaintiff that he had finally determined the amount of its tax; that its application for reconsideration of its petition for special assessment had been denied. Conferences between the parties extended over many years, the last being January 28, 1926. Plaintiff made no claim for abatement, and no claim for a refund was made until May 24, 1928. These facts are rather persuasive that the parties intended the word "assessment" in their contract of December 7, 1925, to include the word "collect."

Parties are not ordinarily inclined to do vain things. There being no attempt or intent on the part of the commissioner to add to plaintiff's assessment, it would have been a vain thing to make an agreement granting a privilege which there was no intention to use. On the other hand, plaintiff, no doubt, hoped to have its assessment reduced by virtue of its petition for a special assessment or otherwise, and in the meantime did not desire to pay the balance of tax assessed, and therefore waived assessment intending also thereby to waive collection of the tax, which had been assessed. A closely analogous case is that of Roy & Titcomb, Inc., v. United States, 39 F.(2d) 753, 755, C. C. H. Tax Service 1930, vol. 3, p. 8357. In this case the Court of Claims had before it these facts: A jeopardy assessment for 1918 made on March 3, 1924, within the five-year period prescribed by the Revenue Act of 1921 (42 Stat. 227). On June 7, 1924, an unlimited assessment waiver was given. On November 20, 1925, another assessment waiver was given extending the time until December 31, 1926. The court held that collections made in July and August, 1926, were not barred and consequently the taxpayer could not recover, saying:

"We are of opinion that a consent extending the time for assessment of taxes likewise extended the time for collection of such tax. Watt & Holmes Hardware Co., 8 B.

T. A. 372, Sunshine Cloak & Suit Co., 10 B. T. A. 971, W. P. Brown & Sons Lumber Co. v. Commissioner of Internal Revenue (C. C. A. 6th Cir.) 38 F.(2d) 425, paragraph 668, vol. 1, 1930 P. H. Fed. Tax Service. It is evident that at the time the consent of June 7, 1924, was entered into between the plaintiff and the Commissioner, it was intended that the time for collection should be extended because the tax had already been assessed and plaintiff's claim for the abatement thereof was pending before the Commissioner. On the date this consent was entered into, only eight days of the five-year limitation period for collection remained, and it seems evident that the purpose of the plaintiff in executing this consent was to be relieved from paying the jeopardy assessment until its abatement claim could be acted upon and that the purpose of the Commissioner in its execution was to enable him to consider and decide upon the merits of the abatement claim before enforcing payment.

"* * * By these consents, the last of which was in effect at least until December 31, 1926, the plaintiff obtained a postponement of the collection of the additional assessment for 1918 until its abatement claim was finally acted upon and the assessment materially reduced. It would be a vain act for the parties to consent to the assessment of a tax that had already been assessed within the period of limitation provided by the statute, or to consent only to an assessment of a tax that could not be collected.

"Consents such as we have here must be construed in the light of the conditions existing at the time they are entered into and we think under the facts shown by the record the parties intended by these consents that the Commissioner should have the right to collect the tax for 1918 at any time prior to the date agreed upon.

"* * * There is no indication in this case that the parties anticipated any further assessment for 1918 but, on the contrary, they had in mind the Commissioner's decision making final the jeopardy assessment that had already been made, which decision did not occur until October, 1926. At the time both consents were entered into the parties were endeavoring to ascertain whether the assessment of the additional tax for 1918, which had already been made, was correct and what portion, if any thereof, should be paid by the taxpayer. * * *"

For the reasons given, I conclude that the agreement of December 7, 1925, extend-

ed the time for collection until December 31, 1926, and therefore that the statute' of limitations was not a bar at the time the taxes were paid.

Let an order directing the entry of judgment in accordance with the findings of fact, conclusions of law, and this opinion be submitted.