**UNITED STATES v. SOUTHERN LUM-
BER· CO.**

No. 9007.

Circuit Court of Appeals, Eighth Circuit.

Aug. 11, 1931

G. T. Sullins, Asst. U. S. Atty., of Ft. Smith, Ark., and M. W. Goldsworthy, Sp.

Atty., Bureau of Internal Revenue, of Washington, D. C. (W. N. Ivie, U. S. Atty., of Ft. Smith, Ark., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Lester L. Gibson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for the United States.

H. T. Harrison, of Little Rock, Ark. (Edward L. Wright, of Little Rock, Ark., on the brief), for appellee.

Before KENYON and BOOTH, Circuit Judges, and OTIS, District Judge.

KENYON, Circuit Judge.

This suit was brought to recover a portion of the income tax assessed against appellee, a corporation, for the years 1918 and 1919, together with interest thereon.

Parties will be designated as in the trial court.

The undisputed facts are as follows: Plaintiff filed its return as to the 1918 tax on June 12, 1919, showing a total tax due of $122,423.41, which was duly assessed by the Commissioner of Internal Revenue (hereinafter termed Commissioner) on September 24, 1919. On September 30, 1919, plaintiff filed claim for the abatement of $90,406.79 of the tax shown due on its return. The tax was finally determined by the Commissioner on February 3, 1926. Additional protests were filed by the taxpayer on April 25, 1926, and final conference was held on July 2, 1926. The unpaid balance of $82,423.49, principal, was paid October 19, 1926. Interest on the amount in the sum of $34,119.01 was paid November 30, 1926. The claim for abatement was rejected November 16, 1926. As to this tax three waiver agreements were entered into between the Commissioner and the taxpayer. The first dated January 23, 1924, extended the period for determination, assessment, and collection of the tax for the year involved to June 12, 1925. The second waiver dated January 8, 1925, extended the period for making any assessment of income or excess profit tax under any return for the year 1918 to December 31, 1925. The third waiver dated December 17, 1925, extended the period for making any assessment of income or excess profit tax under any return for the year 1918 to December 31, 1926. October 6, 1928, claim for refund of $82,423.49 was filed. May 25, 1929, claim for refund of interest in the sum of $34,119.01 was filed. Both claims were rejected in July, 1929. The proceedings relative to the 1919 tax were similar except as to dates. The return for 1919 was filed March 15, 1920, showing a tax due of $89,688.63, which was duly assessed by the Commissioner on May 29, 1920. March 17, 1920, plaintiff filed with the Commissioner a claim for the abatement of $55,880.70 of the tax shown due on its return. The tax was ultimately determined on February 3, 1926. Additional protests were filed by the taxpayer on April 25, 1926, and final conference was held on July 2, 1926. The claim of the taxpayer was allowed on November 12, 1926, for $16,216.67, and rejected for $39,669.07. This sum was paid to the collector on October 19, 1926. Interest on the tax assessed in the sum of $14,801.45 was paid on November 30, 1926. Two waivers with relation to this matter were entered into by the taxpayer and the Commissioner. One dated January 8, 1925, extended the period for making any assessment of income or excess profit tax for the year 1919 to December 31, 1925. The second waiver was dated December 19, 1925, which extended the period for making any assessment of income or excess profit tax for the year 1919 to December 31, 1926. Claim for refund was filed October 6, 1928, for $39,669.07, the amount rejected in claim for abatement. This refund claim was rejected in November, 1928. A supplemental refund claim was also rejected.

The case was tried by the court without a jury. Motion for judgment made on behalf of defendant was overruled, the findings of fact and the conclusions of law requested by defendant were refused, and judgment was entered against defendant for the sum of $171,013.02 with interest.

The trial court held that the waivers were executed by reason of threat of distraint and after all rights of the government to collect the tax had expired by virtue of the statute of limitations, and therefore payments of the taxes could be recovered from the government; that section 611 of the Revenue Act of May 29, 1928 (26 USCA § 2611), was not applicable as it was enacted after liability for the taxes had been extinguished.

Plaintiff contends that the waivers given do not extend the time for collection, the assessment not being made within the extended period; that section 611 of the Revenue Act of 1928 does not apply, and that collection was not stayed thereby; that the action is brought under section 3220 of the Revised Statutes (26 USCA § 149) for an erroneous or illegally assessed tax and not as one for an overpayment under section 607 of the Revenue Act of 1928 (26 USCA § 2607). It concedes that the government had a right to

collect under an assessment made pursuant to an assessment waiver, but that such is not this case. It is the position of defendant that the collection of the taxes in question was made within the statutory period for collection because of the extensions granted by the waivers; further that the filing of the claim for abatement operated under section 611 of the Revenue Act of 1928 as a stay, and therefore the payments could not be considered as overpayments under the provisions of section 607 of said act relative to payments made after the expiration of the period of limitation properly applicable thereto.

A number of statutes are involved, which we group in the footnotes for convenient reference.[1]

[1] Revenue Act of Nov. 23, 1921, § 250 (d), 42 Stat. 227, 264, 265:

"Sec. 250 * * * (d) The amount of income, excess-profits, or war-profits taxes due under any return made under this Act for the taxable year 1921 or succeeding taxable years shall be determined and assessed by the Commissioner within four years after the return was filed, and the amount of any such taxes due under any return made under this Act for prior taxable years or under prior income, excess-profits, or war-profits tax Acts, or under section 38 of the Act entitled 'An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes,' approved August 5, 1909, shall be determined and assessed within five years after the return was filed, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax; and no suit or proceeding for the collection of any such taxes due under this Act or under prior income, excess-profits, or war-profits tax Acts, or of any taxes due under section 38 of such Act of August 5, 1909, shall be begun, after the expiration of five years after the date when such return was filed, but this shall not affect suits or proceedings begun at the time of the passage of this Act: * * *"

Revenue Act of June 2, 1924, §§ 277, 278 and 280, 43 Stat. 253, 299-301 (26 USCA § 1057 note; § 1058 et seq.; § 1064 note):

"Sec. 277. (a) Except as provided in section 278 and in subdivision (b) of section 274 and in subdivision (b) of section 279—

"(1) The amount of income, excess-profits, and war-profits taxes imposed by the Revenue Act of 1921, and by such Act as amended, for the taxable year 1921 and succeeding taxable years, and the amount of income taxes imposed by this Act, shall be assessed within four years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period.

"(2) The amount of income, excess-profits, and war-profits taxes imposed by the Act entitled 'An act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes,' approved August 5, 1909, the Act entitled 'An Act to reduce tariff duties and to provide revenue for the Government, and for other purposes,' approved October 3, 1913, the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, and by any such Act as amended, shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period. * * *" 26 USCA § 1057 note.

"Sec. 278 * * * (c) Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon.

"(d) Where the assessment of the tax is made within the period prescribed in section 277 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax. Nothing in this Act shall be construed as preventing the beginning, without assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the period within which an assessment may be made.

"(e) This section shall not (1) authorize the assessment of a tax or the collection thereof by distraint or by a proceeding in court if at the time 'of the enactment of this Act such assessment, distraint, or proceeding was barred by the period of limitation then in existence, or (2) affect any assessment made, or distraint or proceeding in court begun, before the enactment of this Act." 26 USCA §§ 1060, 1061 note, and 1062 note.

Revenue Act of 1926, § 1106 (a), 44 Stat. 113 (26 USCA § 1249 note):

"(a) The bar of the statute of limitations against the United States in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability; but no credit or refund in respect of such tax shall be allowed unless the taxpayer has overpaid the tax. The bar of the statute of limitations against the taxpayer in respect of any internal-revenue tax shall not only operate to bar the remedy but shall extinguish the liability; but no collection in respect of such tax shall be made unless the taxpayer has underpaid the tax."

Revenue Act of May 29, 1928, §§ 607 and 611, 45 Stat. 791, 874, 875 (26 USCA §§ 2607, 2611):

"Sec. 607. Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid (whether before or after May 29, 1928) after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim."

"Sec. 611. If any internal-revenue tax (or any interest, penalty, additional amount, or addition to such tax) was, within the period of limitation properly applicable thereto, assessed prior to June 2, 1924, and if a claim in abatement was filed, with or without bond, and if the collection of any part thereof was stayed, then the payment of such part (made before or within one year after May 29, 1928) shall not be considered as an overpayment under the provisions of section 607, relating to payments made after the expiration of the period of limitation on assessment and collection."

The consideration of this case falls into the divisions: (a) The effect of the waivers upon the applicable statute of limitations, (b) the effect of section 611 of the Revenue Act of 1928. It is unnecessary to consume space by setting out all of these waivers. The two relating to the 1919 tax are practically the same as the second and third relating to the 1918 tax, the difference being as to the years. We will set out therefore only the waivers with relation to the 1918 tax. The first, entered into January 23, 1924, is as follows:

"January 23, 1924.

"Income and Profits Tax Waiver.

"In pursuance of the provisions of subdivision (d) of section 250 of the Revenue Act of 1921, Southern Lumber Company, of Warren, Arkansas, and the Commissioner of

Internal Revenue, hereby consent to a determination, assessment, and collection of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of the said Southern Lumber Company for the years 1917 and 1918 under the Revenue Act of 1921, or under prior income, excess-profits, or war-profits tax Acts, or under Section 38 of the Act entitled An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes, approved August 3, 1909. This waiver is in effect from the date it is signed by the taxpayer and will remain in effect for a period of one year after expiration of the statutory period of limitation, or the statutory period of limitation as extended by any waivers already on file with the Bureau, within which assessments of taxes may be made for the year or years mentioned.

"[Signed] Southern Lumber Company,
 Taxpayer,
"By Fred Wyman, President.
"D. H. Blair (SA) Commissioner."

It is to be noted that this waiver consents to a later "determination, assessment and collection" of the amount of the tax. Little objection is found by plaintiff to this waiver.

The second waiver, dated January 8, 1925, is as follows:

"January 8, 1925.

"Income and Profits Tax Waiver.

"(For taxable years ended prior to March 1, 1921.)

"In pursuance of the provisions of existing Internal Revenue Laws Southern Lumber Company, a taxpayer of Warren, Arkansas, and the Commissioner of Internal Revenue hereby waive the time prescribed by law for making any assessment of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of said taxpayer for the year 1918 under existing revenue acts, or under prior revenue acts. This waiver of the time for making any assessment as aforesaid shall remain in effect until December 31, 1925, and shall then expire except that if a notice of a deficiency in tax is sent to said taxpayer by registered mail before said date and (1) no appeal is filed therefrom with the United States Board of Tax Appeals then said date shall be extended sixty days, or (2) if an appeal is filed with said Board then said date shall be extended by the number of days between the

date of mailing of said notice of deficiency and the date of final decision by said Board.
"Southern Lumber Company, Taxpayer,
"By Fred Wyman, President.
"D. H. Blair, Commissioner."

This extends time for making *assessment,* etc.—does not use the words "determination" and "collection."

The third waiver, dated December 17th, 1925, is as follows:

"December 17th, 1925.
"In pursuance of the provisions of existing Internal Revenue Laws Southern Lumber Company, a taxpayer of Warren, Arkansas, and the Commissioner of Internal Revenue hereby waive the time prescribed by law for making any assessment of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of said taxpayer for the year 1918, under existing revenue acts, or under prior revenue acts.

"This waiver of the time for making any assessment as aforesaid shall remain in effect until December 31, 1926, and shall then expire except that if a notice of deficiency in tax is sent to said taxpayer by registered mail before said date and (1) no appeal is filed therefrom with the United States Board of Tax Appeals then said date shall be extended sixty days, or (2) if an appeal is filed with said Board then said date shall be extended by the number of days between the mailing of said notice of deficiency and the date of final decision by said Board.
"Southern Lumber Company, Taxpayer,
"By Fred Wyman, President.
"D. H. Blair, Commissioner."

This waiver also uses only the term "assessment."

These waivers constitute an unbroken continuation of time. If the waivers accomplish what defendant claims, then the period of limitation under section 250 (d) of the Revenue Act of 1921, supra, which was for five years unless the Commissioner and the taxpayer consented in writing to the later "determination, assessment and collection," carried the period of limitation beyond the date of payment of both the 1918 and the 1919 taxes. Prior to the Revenue Act of 1921 there had been no statute of limitations against the government as to its collection of tax moneys. The 1913 Revenue Act (38 Stat. 169) contained a three-year limitation as to assessment alone. Somewhat similar provisions to section 250 (d) of the 1921 Act

ran through the Revenue Acts of 1924 and 1926 (43 Stat. 253; 44 Stat. 9). It is reasonably clear that the limitation on collection as to the assessments here would be governed by provisions of section 250 (d) of the 1921 Act, and the limitation would commence to run from the date the returns were filed. The provision of 278 (d) of the 1924 Revenue Act that the period of limitation on collection is to run from the date of assessment is excluded by section 278 (e) from application to assessments made prior to June 2, 1924, and as to such the limitation continues to run from the date the return was filed. Russell et al. v. United States, 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255.

[3-5] The importance of the waivers as to this branch of the government's defense is evident. Without them the time limitation of section 250 (d) for collection would have passed prior to payment. It is probable that had there been no waivers the government would have collected its taxes without any question arising as to the statute of limitations. Waivers are of quite general use in the adjustment of federal taxes. They need not be given prior to the expiration of the statutory period of limitation or such period as extended by valid waivers, but at any time with the effect of reviving liability. W. P. Brown & Sons Lumber Co. v. Commissioner of Internal Revenue (C. C. A.) 38 F.(2d) 425; Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335; Burnet v. Chicago Ry. Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349. Their purpose is to give a longer period for the determination of tax liability where the time under the applicable statute of limitations is insufficient. The courts have tried to carry out this purpose, and while holding that the waiver is not a contract, Florsheim Bros. Co. v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542; Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335, they have in construing waivers considered the intention of the parties as an important factor. The taxpayer waives the time limitation, and while the signature of the Commissioner of Internal Revenue is required only for administrative purposes, Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 147, 75 L. Ed. 335; Burnet v. Chicago Ry. Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. 349, the government under the waiver gives up its present right to collect, and its intention as well as that of the taxpayer is entitled to consideration.

Does the term "assessment" as used in these waivers cover determination and collection? Do the waivers apply to assessments which were already made at the time the waiver was given?

We think the question of whether the term "assessment" in a waiver covers collection has been settled in a number of cases, and particularly the late case of Stange v. United States, supra. The facts are not precisely the same as here but the question there arose as here under section 250 (d) of the Revenue Act of 1921. The waiver there covered in its terms "all statutory limitations as to the time within which assessments based upon such liability may be entered." It was contended that Congress in respect of waiver had prescribed in section 250 (d), supra, a mandatory procedure, and that time for action would be deferred only if the taxpayer waived "determination, assessment, and collection," and that nothing was accomplished by consenting to an assessment without consent to collection. The court said, "We are of the opinion that the validity of a waiver under section 250 (d) was not conditioned on the precise use of the three words therein mentioned." And further that: "The parties cannot have intended to have the amount of the tax ascertained and to leave the taxpayer free to pay it or not. They clearly contemplated the entire procedure necessary to determination and collection of the tax. This does not mean that the distinctions between assessment and collection were to be disregarded, but merely that the employment of a single term comprehended both steps." The court pointed out that the failure to use words waiving the limitation upon collection was explained by the prevailing belief prior to the decision in Bowers v. N. Y. & Albany Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676, that distraint was possible even if the statutory period for collection by suit had expired. On this question, see also Greylock Mills v. Commissioner of Internal Revenue (C. C. A.) 31 F.(2d) 655; Columbian Iron Works v. Brock (D. C.) 38 F.(2d) 816; Washington Coal & Coke Co. v. Heiner (D. C.) 42 F.(2d) 681; Solomon v. Heiner (D. C.) 43 F.(2d) 592; Sabin v. United States (Ct. Cl.) 44 F.(2d) 70; Roy & Titcomb v. United States (Ct. Cl.) 39 F.(2d) 753; Id., 282 U. S. 811, 51 S. Ct. 197, 75 L. Ed. ——. It was clearly the intention of the parties that the statutory limitation as to five years for determination, assessment, and collection of taxes should be waived.

Does the fact that the assessments here were made prior to the waivers make the waivers inapplicable? It is insisted that the assessments were not made in pursuance of the waivers. We do not think it is important or controlling in this case that such is the fact. The assessments made prior to the waivers may not have been final. In fact as to the 1919 tax the first assessment was not final. They might have been abated later and new assessments made. A redetermination might have involved an additional assessment or a reassessment. In Magee v. United States, 282 U. S. 432, 51 S. Ct. 195, 75 L. Ed. 442, it was held that a statute prescribing the time for assessing income taxes under prior act was applicable to the assessment previously made. The court said: "We think the court was right in construing this statute as applicable to the assessment, although previously made, and hence that the tax was assessed 'within the period of limitation properly applicable thereto,' as required by section 611 of the Revenue Act of 1928." If the assessments were final, there is no reason why effective waivers thereafter could not have been made. The intent and purpose of signing any waiver was to secure an extension of time for consideration of plaintiff's claims for abatement and for the determination of the tax liability. Plaintiff knew as well as the government that the assessment had been made. It was objecting to the amount of tax demanded and insisting on a reduction. It did not accept the assessment as final. It filed claim for abatement as to taxes for both years, raising questions concerning appreciation in value of timber lands and abnormal conditions affecting its capital, questions which required considerable investigation. Under these circumstances waivers were agreed to. The first as to the 1918 tax was in the exact wording of the statute, "determination, assessment and collection." The others as to taxes for both years used merely the word "assessment." What did plaintiff intend by these waivers and what must it have understood? Did it suppose it was merely waiving assessment and not determination and collection? Why waive the doing of something already done? Its intention clearly was to waive the statute of limitations, not only as to the assessments, but also as to the determination and collection of the taxes. If not, what was intended by use of the term "assessment," in all except the first waiver as to the 1918 tax? There had been a plea of abatement filed which absorbed nearly the entire tax if allowed. There was much correspondence and numerous attempts to adjust matters. This very purpose of waiving the time of assessment was to delay time for collection of the tax assessed. There could be no collection without the assessment. Here was a controversy and both the Commissioner and the plaintiff wanted further time for a discussion and determination of the amount due as taxes, and they entered into a written consent therefor. After entering into such consent plaintiff now claims that because the waiver used the term "assessment" instead of "determination, assessment and collection," the words of section 250 (d), Revenue Act 1921, it should be relieved from the payment of its just taxes. It claims now that the waiver was not good because made after the assessment, and that the use of the term "assessment" in the waiver is not sufficient to cover any waiver as to collection. It is purely a technical defense. There is no particular divinity surrounding a defense of the statute of limitations where the government is trying to collect just taxes. We are satisfied that the term "assessment" as used in the waivers was intended by both Commissioner and taxpayer to cover determination and collection, and under the circumstances here should be held so to do. Otherwise the entire performance as to waivers was a foolish and useless affair—an idle gesture. As said by the court in the Stange Case, supra, "It must be assumed that an effective and not a futile act was intended."

Another question raised is that the waivers were obtained by duress. If so they are invalid. Gove v. Nichols, Collector of Internal Revenue (D. C.) 23 F.(2d) 856; Pictorial Printing Co. v. Commissioner of Internal Revenue (C. C. A.) 38 F.(2d) 563; Panther Rubber Mfg. Co. v. Commissioner of Internal Revenue (C. C. A.) 45 F.(2d) 314. A reading of the correspondence and a contemplation of the evidence here shows rather conclusively that there was no duress. Plaintiff's officers indicate in some of the correspondence their pleasure over the way the claims had been handled. They were laboring under no misunderstanding in signing the various waivers. There are cases which indicate the opinion of the court that threat of immediate distraint or other procedure as to collection after the statute of limitations had run might constitute duress. However a suggestion by the government that it would proceed to collect taxes, whether by distraint or by suit, which it claimed to be due and which it was its duty to collect, certainly would not constitute legal duress. The case of Burnet v. Chicago Railway Equipment Co., 282 U.

S. 295, 51 S. Ct. 137, 140, 75 L. Ed. 349, is rather determinative of this question. The court there said: "The taxpayer contends that the waiver was inoperative because secured by duress. The argument is that while the Commissioner in December, 1925, might have made a jeopardy assessment and have enforced collection, such action would have been illegal because the statutory period had then expired, and that a waiver procured by such a threat is ineffective. Whether or not the Commissioner would have been liable to the taxpayer for a collection made as the result of a jeopardy assessment in 1925, we need not determine. He clearly had the power to make such assessment and thereby compel the filing of a claim for abatement and the giving of a bond, or, if such claim and accompanying bond were not filed, to make collection and relegate respondent to an action at law. In the absence of a determination that this deficiency was barred, it was the Commissioner's duty to proceed to insure the assessment and collection of the tax. At his suggestion, the taxpayer executed the waiver. Thereby it was enabled to have all questions concerning the alleged deficiency considered by the Board. A waiver given under such circumstances is not invalid. This contention, which seems to have been raised for the first time in this Court, is also unsound."

Plaintiff insists that waivers subsequent to that of January 23, 1924, were given pursuant to existing internal revenue laws, which brings into play the Revenue Act of 1924. It is true that act provides for waiver of limitation on assessment alone. Section 278 (d), 26 USCA § 1061 note, provides that the six-year limitation imposed thereby on collections shall run from the date of assessment. There would be no need therefore for a separate provision for waiver as to collection. Section 277 (b) of the 1924 act (26 USCA § 1057 note) continues the provisions of the 1921 Act as to certain taxes. In Russell v. United States, supra, as we have before pointed out, it is held that section 278 of the 1924 Act does not affect any assessments made prior to June 2, 1924. We do not perceive how the 1924 Act has any particular applicability to the case at bar.

█ It is also contended that under section 1106 (a) of the Revenue Act of 1926, supra, the liability for the taxes was extinguished. That section does provide that the bar of the statute of limitations shall extinguish the liability as well as the remedy. This subsection was repealed as of February 26, 1926, by section 612, Act May 29, 1928 (45 Stat. 875). Wyman, Partridge & Co. v. United States (Ct. Cl.) 41 F.(2d) 886, and Heiner v. Erie Coal & Coke Co. (C. C. A.) 42 F.(2d) 214, held that the taxpayer obtained a vested right under this statute, and that having become vested it could not be affected by subsequent repeal. In the Wyman, Partridge Case, supra, the Court distinguished its opinion from that in the Oak Worsted Mills Co. v. United States (Ct. Cl.) 36 F.(2d) 529, and Gotham Can Co. v. United States, 37 F.(2d) 793, 68 Ct. Cl. 749, where the tax was collected prior to the passage of the Revenue Act of 1926. These two cases, Wyman, Partridge & Co. v. United States and Heiner v. Erie Coal & Coke Co., were reversed by the Supreme Court (Mascot Oil Co. v. U. S., 282 U. S. 434, 51 S. Ct. 196, 197, 75 L. Ed. 444) in an opinion in which it affirmed Mascot Oil Co., Inc., v. United States (Ct. Cl.) 42 F.(2d) 309. Referring to the decision in these two cases and the fact that collections were made while section 1106 (a) of the Revenue Act of 1926 was in force, which is the situation in the case at bar, the court said: "That section was repealed, as of the date of its passage, by section 612 of the Revenue Act of 1928 (45 Stat. 875). It is not necessary to attempt to resolve the questions raised by the ambiguous language of this section, as we are of the opinion that, from any point of view, it does not protect the petitioners from the operation of section 611 of the Revenue Act of 1928. At the time the taxes were collected, there was no liability on the part of the petitioners, but this was also true in the case of the petitioners in Graham v. Goodcell [282 U. S. 409, 51 S. Ct. 186, 75 L. Ed. 415], supra. The Congress had constitutional authority in the circumstances set forth in section 611 of the Revenue Act of 1928 to cure the defect in administration which had resulted in the collection of the tax after the statute of limitations had run and to deny recovery to the taxpayers for the amount paid. The fact that section 1106 (a) of the Revenue Act of 1926 was in effect at the time of the collection is a distinction which does not affect the result." We are satisfied that section 1106 (a) of the 1926 Revenue Act does not affect the result here.

We have no doubt in the light of the decisions which we have cited and from some of which we have quoted that the waivers of assessment constituted waivers of the statutory period for collection, and carried the time of limitation for suit to collect beyond the time of payment. None of the points

raised against said waivers are in our judgment sound.

 We pass then to the other proposition urged by the government as to why plaintiff cannot recover in this case. Even if the government's position here as to the written waivers was erroneous, we are satisfied that plaintiff would be precluded from recovery by section 611 of the Act of 1928, supra. Section 607 of this act provides that any tax paid after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and recoverable by the taxpayer, while section 611 provides that if a claim in abatement is filed with or without bond and the collection of any part of the tax was *stayed,* then the payment is not an overpayment under section 607. In Oak Worsted Mills Co. v. United States (Ct. Cl.) 36 F.(2d) 529, 534, the purpose of the enactment of section 611 is discussed, and a part of the report of the Ways and Means Committee on the Revenue Act of 1928 is set forth, which shows that due to misunderstandings as to the limitation upon collection by distraint of amounts ultimately determined to be due, payments had been made by taxpayers quite generally, even though the statute of limitations had run. Congress intended that such payments should not be refunded, and the report of the Ways and Means Committee states in relation to section 611: "However, it must be borne in mind that the provision authorizes the retention and collection only of amounts properly due, and *merely withdraws the defense of the statute of limitations.*" The decision in Oak Worsted Mills Co. v. United States, supra, was written by Judge Green, who for a long time was the efficient Chairman of the Ways and Means Committee of the House of Representatives, and whose knowledge of the general subject is most complete. The opinion is remarkably clear and strong. It held that section 611 of the Revenue Act of 1928 applied to cases where the collection is "stayed" as that word is used in ordinary conversation, "meaning to hold from proceeding, to postpone, or to keep back." (Syllabus.) Also that the act was not unconstitutional as depriving taxpayer of vested rights, for the reason that no vested right accrued by the running of the period of limitation for collection of a valid tax. This case was affirmed by the Supreme Court (Graham & Foster v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 75 L. Ed. 415). The Supreme Court considered this case in connection with eight others, and settled certain questions which had troubled the courts and had been the subject of much diversity of opinion relative to what the term "stay" means under the statute. Some of these cases had held that section 607 referred only to making of administrative refunds and not to suits in court. Others held the word "stay" must be a judicial stay or some action that would tie the hands of the Commissioner with respect to collection; others that section 607 and 611 were not retroactive; others that the assessment involved had been made after the expiration of the statutory period. A long line of cases, however, held section 611 retroactive and applicable to the facts presented in the particular cases. Among them may be cited Goodcell v. Graham et al. (C. C. A.) 35 F.(2d) 586; Oak Worsted Mills v. United States (Ct. Cl.) 36 F.(2d) 529; Regla Coal Co. v. Bowers (D. C.) 37 F.(2d) 373; Gotham Can Co. v. United States (Ct. Cl.) 37 F.(2d) 793; Rockland & Rockport Lime Corp. v. Ham, Collector of Internal Revenue (D. C.) 38 F.(2d) 239; North American Creamery Co. v. Willcuts (D. C.) 38 F.(2d) 483; American Glue Co. v. United States (D. C.) 42 F.(2d) 235; Boston Pressed Metal Co. v. United States (Ct. Cl.) 42 F.(2d) 312; Daniel Reeves, Inc., v. Anderson, Collector of Internal Revenue (C. C. A.) 43 F.(2d) 679; Imhoff-Berg Silk Dyeing Co. v. United States (D. C.) 43 F. (2d) 836; Jennings, etc., v. Charles W. Anderson (C. C. A.) 43 F.(2d) 683; Sterling Wholesale Grocery Co. v. United States (D. C.) 45.F.(2d) 227.

The opinion in the nine cases decided by the Supreme Court on January 26, 1931, Graham & Foster v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 75 L. Ed. 415, destroyed any force or effect of the cases taking the view that section 611 did not apply to the particular facts presented so as to preclude recovery of overpayments as provided by section 607. The exhaustive consideration of the subject in the opinion of the Supreme Court clarified a somewhat cloudy situation. The court holds: That voluntary delay in collection of taxes where a claim in abatement was filed constitutes a stay under section 611, that said section was applicable to suits brought and claims filed for refund before its enactment, that it applied to involuntary as well as voluntary payments by the taxpayer, that it was not a denial of due process of law, that it was not unconstitutional as arbitrary and capricious in its classification, that it was intended to be and was retroactive, and that no asserted vested rights arising from mistakes of government officials could prevent the leg-

islative power from curing defects in administration, though it might destroy causes of action otherwise existing, that it precludes recovery of interest as well as principal. The court points out on the question of retroactivity that the statute is merely dealing with the period of limitation and it also states as to stay that under section 3224 of the Revised Statutes (section 154, title 26, USCA) suit to restrain the assessment or collection of taxes could not be maintained in any court and therefore the word "stay" cannot be taken to be limited to a mandatory stay, that even where the claim in abatement was rejected prior to the expiration of the period of limitation the case would not fall outside the purview of section 611. It refers to section 611 enacting a qualification of section 607 by providing that under certain circumstances the payment of the tax shall not be considered an overpayment. These circumstances are: "(a) An assessment of the tax within the time applicable thereto and before June 2, 1924, (b) the filing of a claim in abatement, (c) the stay of the collection of any part of the tax, and (d) the payment of such part of the tax before, or within one year after, the enactment of the Act of 1928." All of these circumstances are present in the instant case. There was an assessment before June 2, 1924. A claim in abatement was filed as to the assessment of taxes for both years. Investigation was made, conferences took place, correspondence was carried on. The government could have proceeded in the absence of waivers to collect the taxes. It did not do so. Collection was stayed. Payment of the taxes was made before the enactment of the statute of 1928. It would seem the Supreme Court has said in this opinion all there is to say on this particular subject, and that said decision fits this case perfectly.

Plaintiff claims, as it did concerning the waivers, that there could be no stay on account of section 1106 (a) of the Revenue Act of 1926, as it wiped out liability and there was nothing to be "stayed." This is completely answered otherwise in Mascot Oil Co., Inc., v. United States, 282 U. S. 434, 51 S. Ct. 196, 75 L. Ed. 444, which we have quoted in that part of this opinion dealing with waivers.

Plaintiff further claims that its suit is brought under section 3220, Revised Statutes (section 149, title 26, USCA), and that it is not asking a refund as an overpayment, but as an instance of erroneous and illegal collection. We think there is no force in this position, as it is doubted if plaintiff could have proceeded under section 3220 of the Revised Statutes alone, but if there were we are not satisfied that the suit was not brought to recover as for an overpayment under section 607, Revenue Act of 1928, for it may be noted that in plaintiff's response to defendant's answer is found the following: "Plaintiff further alleges and says that payment after the expiration of the period of limitation constitutes an overpayment of taxes." This would indicate that plaintiff proceeded on the theory of recovering an overpayment. The argument that there could be no stay after the operation of the statute of limitations does not fit the situation here. No such claim is made. The stay followed plaintiff's claim in abatement.

Statutes limiting the time for action by the government in collecting its taxes are to be strictly construed in favor of the government. Dupont de Nemours & Co. v. Davis, 264 U. S. 456, 44 S. Ct. 364, 68 L. Ed. 788; W. P. Brown & Sons Lumber Co. v. Commissioner of Internal Revenue (C. C. A.) 38 F. (2d) 425; Imhoff-Berg Silk Dyeing Co. v. United States (D. C.) 43 F.(2d) 836; Bowers v. N. Y. & Albany Lighterage Co., 273 U. S. 346, 47 S. Ct. 389, 71 L. Ed. 676.

Many of the determining decisions as applicable to this case have been rendered since the trial court entered its judgment. The law at that time was uncertain but these recent decisions of the Supreme Court have practically settled all the legal questions here involved contrary to plaintiff's theory. The judgment of the trial court is reversed, and the case is remanded for proceedings in harmony with this opinion.

Reversed and remanded.